UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MASSACHUSETTS MUTUAL LIFE )
INSURANCE COMPANY, )
 )
        Plaintiff, )
 )
vs. ) 10 C 1978
 )
CHRISTOPHER ZAUCHA, )
 )
        Defendant. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on Plaintiff Massachusetts Mutual Life Insurance Company's ("Mutual Life") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the motion is granted.[1]

## BACKGROUND

Plaintiff Mutual Life is an insurance company headquartered in Massachusetts and transacting business in Illinois. Defendant Christopher Zaucha ("Zaucha") is a self-employed individual residing in Chicago, Illinois.

---

[1] Mutual Life also moved to strike parts of Defendant Christopher Zaucha's responses to Mutual Life's statement of facts. In the present ruling, the Court considered and discussed only the facts that are supported by admissible evidence introduced by the parties.

On or about May 7, 2008, Zaucha wanted to purchase life and disability insurance and met with Arthur Monroe ("Monroe"), a Water Tower Financial Partners ("Water Tower") employee licensed to sell insurance. Monroe helped him complete the application forms for the life and disability insurance policies.

During the application process for the life insurance policy (the "Life Policy"), Monroe asked several questions and wrote down the information Zaucha gave him. Zaucha's annual earned income became a critical part of the application process and the parties now dispute the reason why Monroe stated that Zaucha's annual earned income was $80,000. On one hand, Zaucha alleges that Monroe asked him about his assets and income, and that the number Monroe ultimately wrote down was the product of their joint calculation. Zaucha also alleges that, at Monroe's request, he tendered a copy of his 2007 income tax return, even though Mutual Life did not require any proof of income. On the other hand, Monroe maintains that Zaucha never gave him the tax return and unilaterally represented that his annual income was $80,000. After completing the Life Policy, Monroe gave Zaucha a copy of the form and told him that it would be submitted to Mutual Life for underwriting.

Once Zaucha signed the application for the Life Policy, Monroe helped Zaucha complete the disability application form (the "Disability Policy"). Again, the parties dispute the method they used to identify Zaucha's income in the application form.

According to Zaucha, Monroe was aware of his annual income because Zaucha had supplied a copy of his 2007 income tax return. Zaucha also alleges that the amount stated in the form was again the product of their joint calculation: Monroe informed Zaucha that he could not pick $100,000 and gave him a choice between $70,000, $80,000, or $90,000. Based on the numbers Monroe indicated, Zaucha chose $80,000. Monroe's summary of the events differs. He alleges that Zaucha never provided his 2007 income tax return. According to Monroe, Zaucha unilaterally represented that he made $100,000 annually. Monroe testified that even though Zaucha told him he earned $100,000, he told Monroe to write down a lower number to avoid paying a higher premium. Following Zaucha's instructions, Monroe wrote down $80,000 instead of $100,000. Finally, Zaucha read and signed the application for the Disability Policy.

Both the Life and the Disability Policies stated that "[a]ny policy issued as a result of material misstatement or omission of facts may be voided, and the company's only obligation shall be to return the premiums paid." The Policies further provided that "to the best of the applicant's knowledge and belief, all statements made in this [application] are complete, true, and correctly recorded."

Mutual Life issued the Life Policy on May 14, 2008, and the Disability Policy on July 11, 2008. On March 30, 2009, Zaucha suffered an injury and submitted a claim for disability benefits under the Disability Policy. On July 1, 2009, Mutual Life received

the claim and conducted a routine investigation. Mutual Life alleges that, while investigating the claim, it obtained, for the first time, Zaucha's 2007 and 2008 income tax returns. The tax returns revealed that Zaucha's 2007 and 2008 total income was respectively $6,956 and $5,499.

On or about January 21, 2010, Howard Knudsen ("Knudsen"), a Mutual Life underwriter, reviewed the financial information in the Life and Disability Policies to inquire whether coverage would have been issued if Zaucha's true financial circumstances had been known. According to Knudsen, one of the factors that Mutual Life underwriters consider in evaluating applications is the applicant's ability to pay premiums. Knudsen calculated that, under both Policies, the combined premiums Zaucha would have to pay in 2008 and 2009 amounted to $3,182.41. The combined premiums represented 45.75% of Zaucha's 2007 income and 57.87% of his 2008 income. Based on these calculations and on Mutual Life's underwriting policies, Knudsen concluded that, had Zaucha truthfully disclosed the correct amount of his income, Mutual Life would have declined the applications because the misrepresentations materially affected its acceptance of risk. Knudsen also determined that had Zaucha disclosed that he earned less than $12,000 a year, Mutual Life would have rejected the disability application as a matter of policy. Zaucha disputes Knudsen's

conclusions by alleging that Mutual Life's underwriters were aware of his income because they were in possession of his 2007 income tax return.

By letter dated February 9, 2010, Mutual Life notified Zaucha that it rescinded the Life and Disability Policies based on the misrepresentations of his earned income. With the letter, Mutual Life tendered to Zaucha checks for the refund of all premiums paid pursuant to the Policies. Zaucha refused to cash the checks.

On March 30, 2010, Mutual Life filed a four-count complaint against Zaucha. In Counts I and II, Mutual Life asserts that, because of Zaucha's material misrepresentations, it is entitled to rescind of the Life and Disability Policies. In Counts III and IV, Mutual Life seeks a declaratory judgment that the Policies are null and void. Mutual Life now moves for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific

citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). With these principles in mind, we turn to Mutual Life's motion.

## DISCUSSION

The parties do not dispute that Illinois substantive law applies in this case. Under Illinois law, an insurance company may deny coverage because of a misrepresentation in an application if the misrepresentation "materially affects either the acceptance of the risk or the hazard assumed by the company." 215 Ill. Comp. Stat. 5/154.

### A. Misrepresentations

Mutual Life argues that there is no genuine issue of material fact that, when Zaucha stated that he earned $80,000 per year, he objectively misrepresented his income in the Life and Disability Policies. "A misrepresentation in an application for insurance is a statement of something as a fact which is untrue and affects the risk undertaken by the insurer." *Ratcliffe v. Int'l Surplus Lines Co.*, 550 N.E.2d 1052, 1057 (Ill. App. Ct. 1990). "Whether a misrepresentation occurred is determined objectively,

on the basis of the facts known to the insured at the time of application." *Id.* at 1057-58. Here, it is undisputed that Zaucha signed the Life and Disability Policies which stated that his annual earned income was $80,000 and that all statements made in the Policies were "complete, true, and correctly recorded." It is also undisputed that Zaucha reported in his 2007 and 2008 income tax returns that he earned $6,956 and $5,499 respectively, and that those statements were "true, correct and complete" and made "under penalties of perjury." A comparison of the income disclosed in the applications for insurance with the income reported in the tax returns demonstrates that Zaucha did not accurately represent, and grossly overstated, his income during the application process.

Furthermore, a review of Zaucha's deposition reveals that Zaucha did not know how much money he was actually making. For instance, when asked how much income he earned in 2008, Zaucha responded: "I don't know exactly. And that's because . . . [a] majority of the jobs that I was doing were cash jobs." When asked whether he reported in his tax returns the cash he earned from construction work, Zaucha responded "No. Just the opposite." Finally, Zaucha testified that he would report in his tax returns payments made through checks but not cash payments. Because Zaucha declared he made $80,000 annually when he did not precisely know how much money he actually earned, Zaucha made an untrue statement of fact. Therefore, there is no genuine issue

of material fact that Zaucha's stated income in the Policies constituted misrepresentations.

Zaucha argues, however, that there are questions of material fact as to whether the discrepancy between the income stated in the tax returns and the income stated in the insurance applications proves that the latter is false. According to Zaucha, such a discrepancy merely establishes that only one of the two is false. "[A] failure to disclose material information on an application for insurance may constitute a misrepresentation *when the omission prevents the insurer from adequately assessing the risk involved*. *Methodist Med. Ctr. of Ill. v. Am. Med. Sec.,* 38 F.3d 316, 320 (7th Cir. 1994) (emphasis added). Here, Zaucha represented to Mutual Life that he made $80,000 annually while his tax returns disclose he made substantially less. Because Zaucha failed to disclose which number, if any, is actually accurate, he prevented Mutual Life from adequately assessing the risk it was undertaking. Therefore, there is no genuine issue of fact that Zaucha's omission constitutes a misrepresentation.

Zaucha finally argues that he did not understand that he was legally obligated to report in the insurance applications the same amount he reported in his tax returns. Essentially, Zaucha pleads that he made a mistake or that he did not "knowingly" misrepresent his income because he did not know what information was exactly required from him. Illinois law does not require a "knowing" misrepresentation: a

misrepresentation will defeat insurance coverage, even if the applicant acted in good faith or made a mistake. *Weinstein v. Metropolitan Life Ins. Co*. 60 N.E.2d 207, 210 (Ill. 1945). Therefore, Zaucha misrepresented his income even if he did not know what information was required.

Based on the foregoing analysis, we conclude that there is no genuine issue of material fact that Zaucha misrepresented his income in the insurance applications.

**B.     Materiality**

Mutual Life argues that there is no genuine issue of material fact as to whether Zaucha's misrepresentations were material to the hazard assumed in both policies. A material misrepresentation is one that affects the acceptance of the risk assumed by the insurer. 215 Ill. Comp. Stat. 5/154. Although the materiality of a misrepresentation is ordinarily a question of fact, summary judgment is appropriate where no reasonable person would dispute the materiality of the misrepresentation. *N. Life Ins. Co. v. Ippolito Real Estate P'ship*, 601 N.E.2d 773, 779 (Ill. App. Ct. 1992). The materiality of a misrepresentation to the risk undertaken by an insurer may be established by an underwriter of the insurance company who testifies to his own experience or the practices of the industry. *Stone v. Those Certain Underwriters at Lloyds*, 401 N.E.2d 622, 626 (Ill. App. Ct. 1980). In addition, to establish materiality, a general policy is sufficient and the underwriter need not cite to a specific company rule. *Rivota v. Fid.*

*& Guar. Life Ins. Co.*, 497 F.2d 1225, 1230 (7th Cir. 1974). To that end, Mutual Life submitted a sworn declaration from Knudsen, a Mutual Life underwriter with almost 40 years of experience in the underwriting industry. Knudsen calculated that the combined premiums for 2007 and 2008 respectively amounted approximately to 45% and 60 % of Zaucha's 2007 and 2008 income. Based on his calculations and on Mutual Life's underwriting policies, Knudsen concluded that, Zaucha's income, as reflected in his tax returns, was insufficient to support the premiums under the Policies. Knudsen further concluded that, had Zaucha truthfully disclosed the correct amount of his income, Mutual Life would have rejected the applications because the misrepresentations materially affected its acceptance of risk. Knudsen also indicated that, pursuant to Mutual Life's underwriting practices and policies, the minimum individual annual income for disability insurance was $12,000. Knudsen determined that, had Zaucha disclosed that he earned less than $12,000 a year, he would not have been eligible for disability insurance as a matter of policy.

Based on Knudsen's findings, we conclude that no reasonable minds would dispute that Zaucha's reported income was insufficient to support the required premiums. Undoubtedly, knowledge of Zaucha's true income would have resulted in a different appraisal of the risk involved in the transaction and in a rejection of his

applications for insurance. Accordingly, there is no genuine issue of material fact as to the materiality of Zaucha's misrepresentations.

**C.     The 2007 Income Tax Returns**

Zaucha contends that, even if he made material misrepresentations, Monroe's knowledge and possession of Zaucha's 2007 tax return precludes summary judgment in favor of Mutual Life. Whether Zaucha actually tendered his 2007 income tax return is disputed by the parties. However, even assuming that Monroe was in possession of the tax return, such knowledge cannot be imputed to Mutual Life. Where an applicant has acted in bad faith, either on his own or in collusion with the insurer's agent, knowledge of the agent will not be imputed to the insurer. *Logan v. Allstate Life Ins. Co.*, 312 N.E.2d 416, 421 (Ill. App. Ct. 1974). In the instant case, Zaucha reported in his 2007 and 2008 income tax returns that he made $6,956 and $5,499, respectively. Zaucha also admitted in his deposition that he would not report in his tax returns the amount of cash he generated from his construction work and did not know precisely how much income he earned in 2008. Still, Zaucha signed the Life and Disability Policies which stated that he earned $80,000 annually. The only reasonable inference from the record is that, when he chose to disclose an amount that he knew did not accurately reflect his income, Zaucha acted with the bad faith intent of inflating Mutual

Life's insurance coverage. Accordingly, any purported knowledge Monroe had of Zaucha's 2007 income tax return cannot be imputed to Mutual Life.

**D.     Estoppel**

Zaucha contends that Mutual Life is estopped from denying coverage because Monroe allegedly represented that proof of income was not required for the approval of the disability insurance. In Illinois, an insurer who issues a policy with knowledge about the applicant's condition is estopped from using that condition to defeat applicant's claim. *Moone v. Commercial Cas. Ins. Co.*, 112 N.E.2d 626, 629 (Ill App. Ct. 1953). Zaucha's argument fails for two reasons. First, Zaucha, once again, asks the Court to impute Monroe's purported knowledge of Zaucha's 2007 tax returns against Mutual Life. We concluded, however, that because Zaucha acted in bad faith, Mutual Life will not be held accountable for whatever knowledge Monroe might have had. Second, estoppel is an affirmative defense that a party must plead in responding to a pleading. Fed. R. Civ. P. 8(c). If it is not pleaded, it is waived. *Tornello v. Deligiannis*, 180 F.2d 553, 554 (7th Cir. 1950). Zaucha did not plead estoppel as an affirmative defense and, therefore, has waived the defense. Accordingly, Mutual Life is not estopped from relying on Zaucha's material misrepresentations.

**E.     Waiver**

Zaucha next argues that Mutual Life waived its right to deny coverage because it failed to exercise ordinary diligence. According to Zaucha, Mutual Life should have requested Zaucha's income tax returns prior to issuing the Policies. However, an insurer "need not make any independent investigation and may rely on the truthfulness of answers contained in an insurance application." *Apolskis v. Concord Life Ins. Co.*, 445 F.2d 31, 36 (7th Cir. 1971). Here, it is uncontroverted that the insurance applications expressly required truthful representations. Specifically, both Policies provided that "any policy issued as a result of material misstatement or omission of facts may be voided, and the company's only obligation shall be to return the premiums paid." The Policies also provided that "to the best of the [applicant's] knowledge and belief, all statements made in [the Policy] are complete, true, and correctly recorded." Zaucha signed the Policies and agreed to be bound by them. As a consequence, Mutual Life was not required to exercise due diligence and rightfully relied on the truthfulness of Zaucha's representations. Thus, Mutual Life did not waive its right to rescind the Policies.

In sum, there is no genuine issue of material fact that Zaucha made a misrepresentation which materially affected the acceptance of risk assumed by Mutual Life. Mutual Life is, therefore, entitled to summary judgment in its favor.

## CONCLUSION

Based on the foregoing analysis, the Court grants Mutual Life's motion for summary judgment in its entirety, declares the Life and Disability Policies void, and rescinds the Policy by virtue of 215 Ill. Comp. Stat. 5/154.

Charles P. Kocoras
United States District Judge

Dated:  August 15, 2011